# IN THE UNITED STATES DISTRICT COURT
## FOR MIDDLE DISTRICT OF FLORIDA
### TAMPA CIVIL DIVISION

**CHAMBRE FRAZIER, on behalf of
herself and on behalf of all others
similarly situated,**

      **Plaintiff,**

**v.**                                    **CASE NO.: 8:19-cv-02752-WFJ-AEP**

**PURPLE SQUARE MANAGEMENT COMPANY, LLC,
d/b/a DUNKIN DONUTS, and
GLOBAL RADAR ACQUISTION, LLC,
d/b/a GLOBAL HR RESEARCH, f/k/a
RADAR POST-CLOSING COMPANY, INC.,
f/k/a GLOBAL HR RESEARCH, INC., ,**

      **Defendants.[1]**

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 15(a)(1)(B) and this Court's Order at Doc. 17, Named Plaintiff, Chambre Frazier, files this First Class Action Complaint against Defendants, Purple Square Management Company, LLC d/b/a Dunkin Donuts ("Purple Square"), and Global Radar Acquisition, LLC d/b/a Global HR Research f/k/a Radar Post-Closing Holding Company, Inc., f/k/a Global HR Research, Inc. ("Global HR") (collectively, "Defendants") for violations of the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## PRELIMINARY STATEMENT

1.     Plaintiff is a consumer/job applicant who was the subject of a consumer report used for employment purposes by Defendant Purple Square. Purple Square routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and

---

[1] Based on representations from counsel and independent analysis, Plaintiff intentionally omitted Integrity Employee Leasing, Inc. as a defendant in this First Amended Complaint.

existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment actions, including denial of employment, denial of promotions, and terminations.

2.    Defendant Global HR is a consumer reporting agency.  Global HR provides employers with consumer reports, commonly referred to as "background checks," for employment purposes.  Employers rely on these reports to make employment related decisions on applicants and employees.  Here, Global HR sold Plaintiff's consumer report to Purple Square but, upon information and belief, did so without the proper, required disclosures as explained further below.

3.    The FCRA, specifically 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose.  The use of a consumer report for employment purposes only becomes lawful if and only if the consumer reporting agency and the user, *i.e.* employer, comply with the FCRA's strict requirements.

4.    Defendants willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5.    Purple Square violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first providing a clear and conspicuous disclosure – ***in a document that consists solely of the disclosure*** – that it may obtain a consumer report on them for employment purposes, before obtaining a copy of their consumer report.

6.    Additionally, Purple Square violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without valid written authorization.

7.    And, Purple Square violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse

employment action against Plaintiff and other putative class members without first providing Plaintiff and other affected class members with pre-adverse action notice, a copy of their consumer report, and a summary of their FCRA rights.  Consequently, consumers were deprived of the opportunity to confirm the accuracy of their report, learn the contents of their report, or dispute their report with the consumer reporting agency that compiled it.

8.    Finally, based upon information and belief, including similar allegations raised recently against Global in *Sanders et al. v. Global Radar, LLC, et al*., Case No.: 2:18-cv-00555-JES-NPM, Global HR violated 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) by providing consumer reports used for employment purposes without valid certification from Purple Square that it had complied with the disclosure, authorization and notice requirements set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

9.    Plaintiff asserts FCRA claims against Purple Square on behalf of herself and others to whom Purple Square did not provide a lawful disclosure or from whom Purple Square did not obtain valid written authorization prior to procuring their consumer report, along with those who were not provided pre-adverse action notice, or copy of their report and summary of rights, before being subjected to an adverse employment action.

10.    Plaintiff asserts FCRA claims against Global HR on behalf of herself and a class consisting of consumers whose consumer reports were released by Global HR without a valid certification from the user that it had complied with the FCRA's disclosure requirements *before* Global HR released the consumer's report and would comply with 15 U.S.C. § 1681b(b)(2) and (3), if applicable.

11.    In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of:

> **All employees and job applicants in the United States subject of a consumer report obtained by Purple Square for employment purposes but to whom Purple Square did not provide a lawful disclosure in the five years preceding the filing of this action through the date of final judgment.**

12.    In Count II, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All Purple Square applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this action through the date of final judgment, who were not provided notice, a copy of their report or summary of rights pursuant to § 1681b(b)(3)(A).**

13.    In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) against Global HR on behalf of a "Certification Class" consisting of:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Global HR Research provided without Global HR first obtaining the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action, excluding those class members who released their claims in *Sanders et al. v. Global Radar, LLC, et al.* Case No.: 2:18-cv-00555-JES-NPM.[2]**

14.    On behalf of themselves and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## THE PARTIES

15.    Individual and representative Plaintiff, Chambre Frazier ("Plaintiff") is a member of the putative Background Check, Adverse Action, and Certification classes defined below.

---

[2] Certification in the *Sanders* case was limited to "all natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of a consumer report furnished by Global HR for employment purposes to a client of A1 HR, Continuum, or Accesspoint between July 11, 2013 and January 11, 2019, a class of approximately 20,878 people." Plaintiff is not a member of that class, nor are the putative class members whom she seeks to represent.

16.     Purple Square is a corporation and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

17.     Global HR is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and provides consumer reports to users for employment purposes.

## JURISDICTION AND VENUE

18.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331.

19.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, because the underlying events occurred in or near Tampa, Florida.

## ALLEGATIONS REGARDING DEFENDANT PURPLE SQUARE'S BUSINESS PRACTICES

### *Purple Square's Use of Background Checks*

20.     Purple Square conducts background checks job applicants as part of a standard screening process. Purple Square also conducts background checks on existing employees from time-to-time during the course of their employment.

21.     Purple Square does not perform these background checks in-house. Purple Square uses a consumer reporting agency to obtain this information and report it to Purple Square.

### *Purple Square's FCRA Violations Relating to Background Check Class*

22.     Purple Square procured a consumer report on Plaintiff in violation of the FCRA.

23.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)     *a clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

5

(ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (*emphasis added*).

24.     Purple Square did not provide consumers a clear and conspicuous disclosure before procuring consumer reports.

25.     Purple Square did not have a stand-alone FCRA disclosure form consisting solely of a disclosure.

26.     Purple Square did not obtain a valid written authorization from applicants before procuring their consumer reports.

27.     Providing notice to consumers is a critical component of the FCRA, evidenced by the fact the FCRA also contains several other notice provisions, including 15 U.S.C. § 1681b(b)(3)(a) (pre-adverse action).[3]

28.     The purpose of FCRA notice provisions, including § 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared.  This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness in the use of their personal, private information.

29.     Without clear notice that a consumer report is going to be procured, applicants and employees are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

30.     Using a FCRA disclosure that is not "stand alone" violates the plain language of

---

[3] *See, e.g.*  15 U.S.C. § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

the statute, and flies in the face of unambiguous case law and regulatory guidance from the Federal Trade Commission ("FTC").

31.     Purple Square knowingly and recklessly disregarded case law and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on consumers without complying with the disclosure and authorization requirements of the statute. Purple Square's violations were willful because Purple Square knew it was required to use a stand-alone disclosure form prior to obtaining and using a consumer report on the putative class members.

32.     Purple Square's conduct is also willful because:

    a.     Purple Square is a sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.     Purple Square knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

    c.     Purple Square voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

33.     Purple Square acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check class members. Purple Square knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in promulgations of the FTC and in established case law. Purple Square had access to materials and resources advising them of their duties under the FCRA. Any reasonable employer of Purple Square's size and sophistication knows or should know about

FCRA compliance requirements.

### *Purple Square's FCRA Violations Relating to Adverse Action Class*

34.    The FCRA states "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

35.    Purple Square typically does not provide consumers advanced notice, a copy of their consumer report or summary of rights before using their consumer reports as a basis for an adverse employment action.

36.    Purple Square violated 15 U.S.C. § 1681b(b)(3)(A), which requires that all employers who use consumer reports provide notice,  a copy of the report, and summary of rights to the affected consumer before any adverse action is taken.

37.    By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Purple Square willfully disregarded unambiguous regulatory guidance and the plain language of the statute.  15 U.S.C. § 1681b(b)(3)(A).

### *Global HR's FCRA Violations Relating to the Certification Class*

38.    Congress has recognized consumer reporting agencies like Global HR have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  *See* 15 U.S.C. § 1681.

39.     In accordance with Congress' findings, a consumer reporting agency may only furnish a consumer report for employment purposes if the user has certified its compliance with 15 U.S.C. § 1681b(b)(2)(A) *before* the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

40.     The certification requirement reads, in pertinent part:

> (1) Certification from user. A consumer reporting agency may furnish a consumer report for employment purposes only if –
>
> (A) the person who obtains such report from the agency certifies to the agency that –
>
> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.

15 U.S.C. § 1681b(b)(1)(A)(i).

41.     A consumer reporting agency that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the user is furnishing the consumer report unlawfully. *See* 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii). The paragraphs referenced in § 1681b(b)(1)(A)(i) include the stand-alone disclosure, written authorization and pre-adverse action requirements set forth in §§ 1681b(b)(2)(A)(i)-(ii) and § 1681b(b)(3).

42.     The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework created by Congress to safeguard consumers' rights to notice, privacy and information.

43.     Based upon information and belief, including investigation into similar allegations raised recently against Global in *Sanders et al. v. Global Radar, LLC, et al*., Case No.: 2:18-cv-00555-JES-NPM, Global HR furnished consumer reports to Purple Square and other employment-

purpose users without first obtaining the required certification of compliance.

44.    More specifically, based upon information and belief, Global HR Research furnished the consumer reports to Purple Square without requiring Purple Square to first certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3) (when applicable, as it was in Plaintiff's case).

45.    In fact, as expanded on further below, Purple Square could not have possibly certified compliance with § 1681b(b)(2)(A) because the disclosure form provided to Plaintiff did not satisfy the requirements of § 1681b(b)(2), something Global HR should have known considering that, upon information and belief, Plaintiff believes Global HR originally drafted the template disclosure.  Nor could Purple Square have certified compliance with § 1681b(b)(3) to Global HR because, in fact, it failed to provide any pre-adverse notice whatsoever.

46.    It violates the FCRA for a consumer reporting agency to furnish a consumer report for employment purposes unless the consumer reporting agency has received the FCRA-mandated certification of FCRA compliance from the user.  In fact, compliance with the certification requirement provides the *only* lawful means for a consumer reporting agency to furnish a consumer report for employment purposes.

47.    In the alternative, to the extent Global HR is relying upon a "blanket certification" from Purple Square as to its future compliance with 15 U.S.C. § 1681b(b)(2)(A) and 15 U.S.C. § 1681b(b)(3), such prospective certifications do not satisfy 15 U.S.C. § 1681b(b)(1)(A).  Rather, Global HR was required to obtain a specific certification from Purple Square after Purple Square had provided a compliant disclosure form to Plaintiff and received Plaintiff's authorization but before it furnished Purple Square with the consumer report.  (*See* 1681b(b)(1)'s use of the phrase "has complied with paragraph (2) with respect to the consumer report.")

48.    A prospective, blanket certification from an employer does not comply with 1681b(b)(1).  Such prospective certification actually runs counter to § 1681b(b)(1)'s use of the phrase "has complied," which clearly refers retrospectively to an action already taken. 15 U.S.C. § 1681b(b)(1) ("the person has complied with paragraph (2)" (emphasis added)). Thus, in the alternative, and to the extent Global HR is relying upon a blanket certification contained in its agreement with Purple Square, or any other employer to whom it furnished consumer reports, such reliance violates the plain language of 15 U.S.C. § 1681b(b)(1)(A)(i).

### *How Purple Square and Global HR Violated Plaintiff's Rights*

49.    Defendants' violations of Plaintiff's rights ultimately caused Plaintiff to lose a promotion, incur a demotion, suffer lost wages, and, eventually, cost Plaintiff her job.

50.    In July of 2019, Plaintiff was working for Purple Square as an assistant manager of a Dunkin Donut's when she applied for a promotion to a Store Manager position at a different location.  The location where Plaintiff was to become Store Manager was far from her home but, due to the promise of increased pay, the promotion would have made a big difference in her life financially.

51.    During the job promotion application process, Plaintiff was transferred to the Dunkin Donut's new location on or about July 29, 2019. As part of the process, Purple Square provided Plaintiff with an FCRA disclosure.

52.    The purported FCRA disclosure presented to Plaintiff did not clearly and conspicuously disclose to Plaintiff that Purple Square intended to procure her consumer report for employment purposes from a consumer reporting agency.

53.    Plaintiff attempted to read the disclosure but was distracted from the disclosure by the presence of additional information, including information about inapplicable state laws

pertaining to background checks.   The disclosure also confused Plaintiff due to the inclusion of various inapplicable state law provisions.

54.    On or about August 2, 2019, Purple Square obtained Plaintiff's consumer report from Global HR.

55.    Based on the contents of the consumer report, Purple Square rescinded its offer to promote Plaintiff, then demoted Plaintiff, reduced her pay, and cut her hours.  All of these adverse employment actions were done without first providing her a copy of her consumer report or summary of her rights.

56.    After losing the job promotion, Plaintiff was worried about the contents of her consumer report, whether it was accurate, and how it would impact her future employment prospects.

57.    If Purple Square had provided Plaintiff with pre-adverse action notice, a copy of his consumer report and summary of her rights in late July to early August of 2019, Plaintiff could have clarified any confusion, attempted to explain any issues therein, and possibly would have furthered her career at Purple Square.   However, Purple Square did not afford Plaintiff the opportunity to address any concerns with her consumer report, or plead her case, before rejecting her promotion.

58.    In other words, as a result of Defendants' actions, Plaintiff was demoted, lost pay, and, eventually, lost her job when she was forced to resign because she could no longer afford to travel the long distance to the new location to which she was transferred.

## CLASS ACTION ALLEGATIONS

59.    In Count I, pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a Background Check Class (the "Class"), defined as:

> **All employees and job applicants in the United States subject of a consumer report obtained by Purple Square for employment purposes but to whom Purple Square did not provide a lawful disclosure or from whom Purple Square did not obtain written authorization prior to procuring the report in the two years preceding the filing of this action through the date of final judgment.**

60.     In Count II, pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of an Adverse Action Class (the "Adverse Class"), defined as:

> **All Purple Square applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this action through the date of final judgment, who were not provided notice, a copy of their report or summary of rights pursuant to § 1681b(b)(3)(A).**

61.     In Count III, Pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a "Certification Class" defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by Global HR Research provided without Global HR first obtaining the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action, excluding those class members who released their claims in *Sanders et al. v. Global Radar, LLC, et al.* Case No.: 2:18-cv-00555-JES-NPM.**

62.     <u>Numerosity</u>:    The members of the putative Background Class, Adverse Action and Certification classes are so numerous that joinder of all Class members is impracticable. Defendant Purple Square regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently rely on such information, in whole or in part, in the hiring process.    Defendant Global HR regularly furnishes consumer reports to employers, who rely on such information, in whole or in part, in the hiring process.

63.     <u>Typicality</u>:    Plaintiff's claims are typical of those of the members of the putative

classes. Defendant Purple Square uses consumer reports to conduct background checks on employees and prospective employees. Defendant Global HR regularly furnishes consumer reports to employers, who rely on such information, in whole or in part, in the hiring process. The FCRA violations suffered by Plaintiff are typical of those suffered by other members of the putative classes.

64. <u>Adequacy</u>: Plaintiff is a member of and will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

65. <u>Commonality</u>: Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

    a. whether Defendant Purple Square uses consumer report information to conduct background checks on employees and prospective employees;

    b. whether Defendant Purple Square's background check practices and/or procedures comply with the FCRA;

    c. whether Defendant Purple Square violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

    d. whether Defendant Purple Square violated the FCRA by procuring consumer report information based on invalid authorizations;

    e. whether Defendant Purple Square violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Class that was based on information in a consumer report, without providing pre-adverse

14

action notice, a copy of their consumer report, or summary of FCRA rights;

f.  whether the disclosures Purple Square provided to applicant failed to meet the requirements of the FCRA;

g.  whether Defendant Global HR violated the FCRA by furnishing consumer reports to users for employment purposes without first obtaining valid certifications from such users; and

h.  the proper measure of statutory damages.

66.  This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendants. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

67.  This case is also maintainable as a class action because Defendants acted or refused to act on grounds that apply generally to the putative classes.

68.  Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct, which is described herein, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions against the Defendants, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will

also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

69.     Plaintiff intends to send notice to all members of the putative classes to the extent required by Federal Rules of Civil Procedure 23. The names and addresses of the putative class members are readily available from Defendants' records.

<u>COUNT I</u>
**Failure to Make Proper Disclosure in
Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i)
(Against Purple Square, Inc.)**

70.     Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1, 3-6, 9, 11, 14-17, 20-33, 49-59, and 62-69.

71.     The FCRA disclosure Purple Square required the Background Check Class to complete as a condition of its employment with Purple Square does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Purple Square failed to provide a stand-alone document as to the consumer report information being obtained and utilized.

72.     For example, the disclosure document, written in "eye-straining tiny typeface writing", contained a plethora of extraneous information in flagrant disregard of the FCRA's stand-alone disclosure mandate, including, but not limited to the following:

    a)    Multiple state law notices informing consumers of their additional rights under California, Maine, New York, Oregon, Minnesota, Oklahoma, and Washington (none of which impact the named Plaintiff here);

    b)    A blanket authorization allowing Defendants to obtain nearly limitless information on Plaintiff and the putative class members from almost every source imaginable, including from "any law enforcement agency,

administrator, state or federal agency, institution, school or university (public or private), information service bureau, or insurance company";

c)    An FCRA-violative agreement by which Plaintiff was forced to purportedly allow Defendants' customers with copies of the information and records Defendants obtained in Plaintiff's consumer report without any additional disclosure and/or authorization by Plaintiff, meaning Plaintiff and the putative class members' private information could be shared with anyone whom Defendants wanted to share it with provided they were also a customer;

d)    A statement that Global HR Research will perform the background check but, then, confusingly, the disclosure states that the investigation may be performed by "another outside organization" which is never named;  and

e)    Haphazardly lumps federal and state disclosures together.  For example, it claims that  "New York and Maine applicants or employees only: You have the right to inspect and receive a copy of any investigative consumer report requested by the Company by contacting the consumer reporting agency identified above directly." A reasonable reader might think that only New York and Maine applicants could contact the consumer reporting agency to get a copy of the report.

73.    Providing notice to consumers is a critical component of the FCRA, as the FCRA also contains several other notice provisions.   A nearly identical disclosure was found to violate the FCRA as a matter of law in *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019).

***Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury***

74.    Plaintiff suffered a concrete informational injury because Purple Square failed to provide Plaintiff with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form.  Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure.

75.    Pursuant to  § 1681b(b)(2)(A)(i), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for

employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff *before* the consumer report was to be procured. By depriving Plaintiff of this information, in the form and at the time she was entitled to receive it, Purple Square injured Plaintiff and the putative class members she seeks to represent.

76.    Purple Square violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Purple Square actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Purple Square might procure a consumer report on each of them for purposes of employment. The required disclosures were not made, causing Plaintiff an informational injury.

77.    Purple Square's failure to provide Plaintiff and the putative classes with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be confused or not understand Purple Square was procuring their consumer reports for employment purposes.

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy*

78.    Purple Square invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

79.    The FCRA created a statutory cause of action akin to invasions of privacy and intrusions upon seclusion, harms recognized as providing the basis for lawsuits under English and American law. Purple Square invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by procuring a consumer report on her and viewing her private and personal information without

any legal basis to do so.

80.    The foregoing violations were willful.  At the time Purple Square violated 15 U.S.C.

§ 1681b(b)(2)(A)(i), Purple Square knew it was required to provide a stand-alone disclosure and

obtain written authorization prior to obtaining a consumer report on Plaintiff and the putative class.

A plethora of authority, including both case law and FTC opinions, existed at the time of Purple

Square's violations on this very issue.  Purple Square's willful conduct is also reflected by, among

other things, the following facts:

a)    Purple Square is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

b)    Purple Square knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

c)    Purple Square voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

81.    Plaintiff and the Background Check Class are entitled to statutory damages of not

less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for

each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive

damages under 15 U.S.C. § 1681n(a)(2).

82.    Plaintiff and the Background Check Class are further entitled to recover their costs

and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**WHEREFORE**, Plaintiff, on behalf of herself and the putative class, prays for relief as

follows:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's

counsel as counsel for the putative class;

c.       issuing proper notice to the putative class at Defendant's expense;

d.       awarding statutory damages as provided by the FCRA, including punitive

damages, to members of the putative class; and

e.       awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
### Failure to Provide Adverse Action Notice in
### Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)
### (Against Purple Square, Inc.)

83.    Plaintiff alleges and incorporates by reference the allegations in paragraphs 1-4, 7, 9, 12, 14, 15-17, 20-21, 34-37, 49-58, 60, and 62-69.

84.    Purple Square used a consumer report to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

85.    Purple Square violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with pre-adverse action notice, a summary of their FCRA rights and a copy of their consumer report before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

86.    The foregoing violations were willful. Purple Square acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). Purple Square knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. Purple Square obtained or otherwise had available substantial written materials that apprised Purple Square of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

87.    Moreover, at the time Purple Square failed to follow 15 U.S.C. § 1681b(b)(3)(A) a

plethora of FTC opinions and case law existed.

*Plaintiff's First Concrete Injury: Informational Injury*

88.     Plaintiff suffered a concrete informational injury because Purple Square failed to provide Plaintiff with information to which he was entitled to by statute, namely pre-adverse action notice, before adverse action was taken.  This notice should have included all information prescribed by § 1681b(b)(3)(A), including: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under § 1681g(c)(3) of the FCRA.

89.     Through the FCRA, Congress has created a new right—the right to receive pre-adverse notice as set out in the FCRA—and a new injury—not receiving said notice.  The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

*Plaintiff's Second Concrete Injury: Inability to*
*Learn of the Contents of Her Report and Tell Her Side of the Story*

90.     Separately from the informational injury suffered, Plaintiff and Class Members have Article III standing to pursue claims for violations of § 1681b(b)(3) because Purple Square's failure to provide timely notice deprived Plaintiff and Class Members of the opportunity to learn about the information in their consumer report and tell Purple Square their side of the story before Purple Square took adverse action.  Thus, Plaintiff was denied the opportunity to determine if the information contained in his consumer report was indeed correct, and to understand how it might affect his future efforts to obtain employment.

91.     With these two recognized injuries directly traceable to Purple Square's failure to timely provide the notices required by § 1681b(b)(3), Plaintiff unquestionably has established Article III standing.

92.     Plaintiff and the Adverse Action Class are entitled to statutory damages of one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

93.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

***WHEREFORE***, Plaintiff, on behalf of herself and the putative class, prays for relief as follows:

a.      determining that this action may proceed as a class action;

b.      designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative classes;

c.      issuing proper notice to the putative classes at Purple Square's expense;

d.      awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

## <u>COUNT III</u>
**Failing to Obtain a Valid Certification Prior to Furnishing a Consumer Report for Employment Purposes Violation of 15 U.S.C. § 1681b(b)(1)(A)(i)**
**(Against Global HR Only)**

94.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1-4, 8, 10, 13-14, 15-17, 20-21, 38-48, 49-58, 61, and 62-69.

95.     Based upon information and belief, including similar allegations raised recently against Global in *Sanders et al. v. Global Radar, LLC, et al*., Case No.: 2:18-cv-00555-JES-NPM, Global HR willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it furnished Plaintiff's consumer report, which was used for employment purposes, without a first obtaining a valid certification

from the user that it had complied with the disclosure and notification requirements set forth in 15 U.S.C. § 1681b(b)(A)(i).

96.    In doing so Global HR invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer reports without a permissible purpose.

97.    Global HR caused Plaintiff injury because the report Global HR furnished was used, in whole or in part, as the basis for an adverse employment action.

98.    Global HR caused Plaintiff injury because, based upon information and belief, Global HR permitted users of their consumer reports to circumvent the disclosure requirements of the FCRA when using consumer reports for employment purposes by requiring users to execute a false certification of compliance as a condition for receiving the consumer reports.

99.    Global HR caused Plaintiff injury by profiting on Plaintiff's personal and sensitive information without a permissible purpose.

### *Plaintiff's Concrete Harm as to Violation of 15 U.S.C. § 1681b(b)(1)(A)(i)*

100.    Global HR Research unjustly enriched itself by unlawfully compiling Plaintiff's personal, private and sensitive information and selling it without a permissible purpose. The injury of "unjust enrichment" has its roots in English common law. Causes of action for unjust enrichment were part of "the traditional concern of the Courts at Westminster." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 US 765, 774 (2000)(*quoting Coleman v. Miller*, 307 U.S. 433, 460 (1939)).

101.    Global HR Research also violated Plaintiff's right to privacy by compiling her personal, private and sensitive information into a consumer report and furnishing it to a third party, Purple Square, without a permissible purpose, since, based upon information and belief, Global

HR Research did not have the requisite certifications from Purple Square.

102.    The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural. The violation alleged here is not some mere technical requirement—without the certification from Purple Square, Global HR had no statutory permission to provide Purple Square Group with a report about Plaintiff.

103.    This improper issuance of a report harmed Plaintiff by invading her privacy—Global HR released Plaintiff's private, personal information to Purple Square without a lawful reason for doing so.  Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

104.    Plaintiff and the putative class members have a common-law right to keep their personal information from being distributed and used without their knowledge. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress' finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

105.    Global HR invaded Plaintiff's and the putative class members' right to privacy when it provided their highly confidential personal information without a statutory basis for doing so.

106.    Global HR's failure to first obtain the appropriate authorizations from Purple Square before selling the consumer reports at issue in this lawsuit injured Plaintiff and the

Certification putative class members in that: (1) their privacy was unlawfully invaded by Global HR's provision of background reports about them without statutory permission; (2) they suffered an informational injury—by not obtaining a proper disclosure of Purple Square's intent to obtain their consumer reports for employment purposes—because Global HR did not itself obtain the appropriate certification from Purple Square that it would comply with the disclosure requirement of Section 1681b(b)(2) or (3); (3) they were deprived of their ability to contest or discuss with Purple Square or their respective employers the contents of their consumer reports because Global HR did not obtain the proper certifications that it would provide the appropriate notice to Plaintiffs if the contents of their consumer reports as a basis to deny employment; and, finally, (4) Global HR was unjustly enriched by selling Plaintiff's and the Certification putative class members' consumer reports when Global HR had no statutory basis on which to release those reports.

107.    The conduct that Global HR engaged in is precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

108.    Plaintiff and the Certification putative class members therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

109.    Global HR Research violated Plaintiff's right to privacy by compiling her personal, private and confidential information into a consumer report without a permissible purpose and selling it for a profit to a third party.

110.    If Plaintiff had known Global HR Research was furnishing her consumer report to Purple Square without a legal right to do so, Plaintiff would not have permitted Global HR Research to furnish her consumer report to Purple Square.

111. If Plaintiff had known Global HR Research was furnishing her consumer report to Purple Square without a legal right to do so, and such consumer report would be the basis for an adverse employment action against her (failure to promote), Plaintiff would not have permitted Global HR Research to furnish her consumer reports to Purple Square.

112. If Plaintiff knew Global HR Research was profiting unlawfully from her consumer report, Plaintiff would not have authorized Global HR Research to compile her personal, private and sensitive information for sale.

113. The foregoing violations were willful. Global HR's willful conduct is also reflected by, among other things, the following facts:

    a. Global HR knew of potential FCRA liability;

    b. Global HR knew of and provided the template FCRA disclosure form used by Purple Square in violation of Section 1681b(b)(2);

    c. At the time Global HR provided Plaintiff's consumer report to Purple Square it was being sued for similar FCRA violations as alleged herein, specifically in *Sanders et al. v. Global Radar, LLC, et al*., Case No.: 2:18-cv-00555-JES-NPM—thus, Global HR was aware of the law and what it took to comply with it;

    d. Global HR is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    e. The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

     f.   Global HR knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

     g.   Global HR voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

114.    The Plaintiff and the "Certification Class" are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

115.    The Plaintiff and the "Certification Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**WHEREFORE**, Plaintiff, on behalf of herself and the putative "Certification Class" pray for relief as follows:

     a.   determining that this action may proceed as a class action;

     b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

     c.   issuing proper notice to the putative class at Global HR's expense;

     d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

     e.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

DATED this 30th day of December, 2019.

Respectfully submitted,

/s/Brandon J. Hill
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com
Email: jcornell@wfclaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 30th day of December, 2019, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**